UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PATRICK MORRISON,                                            :

                         Plaintiff,                :        08 Civ. 4302 (PAC) (AJP)

             -against-                          :        **REPORT AND RECOMMENDATION**

DR. MAMIS,                                                   :

                    Defendant.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Paul A. Crotty, United States District Judge:**

        Pro se plaintiff Patrick Morrison, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brought this action pursuant to 42 U.S.C. § 1983, alleging that his physician, Dr. Mamis, "has ignored [his] complaint [f]or [a] [b]ack injury [f]or 5 months and has denied [him] proper medical treatment and physical therapy."  (Dkt. No. 2: Compl. ¶ II.D.)

        Presently before the Court is defendant's summary judgment motion.  (Dkt. No. 20: Notice of Motion.)  For the reasons set forth below, defendant's summary judgment motion should be GRANTED.

## FACTS

        Plaintiff Patrick Morrison was an inmate in Fishkill Correctional Facility's SHU unit from September or October 2007 until August 2008, when he was transferred to Southport

Correctional Facility.  (Dkt. No. 22: Mamis Rule 56.1 Stmt. ¶ 1;  Dkt. No. 2: Compl. ¶ II.C.; Dkt. No. 23: Mamis Aff. ¶ 2.)  During that time at Fishkill, Morrison signed up for "sick call" (a request to see a nurse)[1] almost every day and frequently asked to be placed on the "call-out" schedule (a list of inmates who want to see a doctor)[2] because of his claimed "serious medical and mental injuries," including a "back injury."  (Mamis Rule 56.1 Stmt. ¶¶ 3, 6; Morrison Dep. at 34-37; Morrison Br. Ex. 6: Morrison Med. Records at 22-24, 26-27, 29-30, 32-33, 35, 37, 40-41, 43-45, 47-49, 51-53, 57-68, 71-75, 80.)  During "sick call," Morrison often complained to the nurses about his back pain and migraines.  (Dkt. No. 25: Mamis Br. at 3; Mamis Rule 56.1 Stmt. ¶ 6; Mamis Aff. ¶ 7; Morrison Dep. at 35-36, 49; Morrison Br. at 3; Morrison Med. Records at 21, 23-24, 26, 29, 31, 35, 37, 40-41, 43-46, 48, 51-53, 55-68, 70-76, 82, 86.)  Morrison was seen by a nurse every day to receive his medication.  (Morrison Dep. at 34-35.)

Defendant Dr. Harry Mamis,[3] who has been employed by DOCS for 25 years, is "the primary care physician for inmates locked in SHU" at Fishkill and sees SHU inmates on the call-out

---

[1]    SHU inmates at Fishkill may seek "non-emergency medical" attention by "request[ing] a sick call the night before so that a nurse can see [the inmate] the next day."  (Mamis Aff. ¶ 3; Dkt. No. 24: Lee Aff. Ex. C: Morrison Dep. at 34-37.)  The nurses working in SHU are available from 6:30 a.m. to 12:00 a.m.  (Mamis Aff. ¶ 3.)

[2]    If an inmate wants to see a doctor for a "non-emergency medical issue," the inmate may request to be placed on the "call-out" schedule.  (Mamis Aff. ¶ 3; Morrison Dep. at 33.)  "On the day of the scheduled call-outs, a corrections officer escorts the inmates on the call-out list to the treatment room in the SHU unit to be seen by the primary care physician."  (Mamis Rule 56.1 Stmt. ¶ 3; see Mamis Aff. ¶ 3; Morrison Dep. at 33.)

[3]    Dr. Mamis' license to practice medicine was revoked in "Massachusetts due to a disciplinary action in New York State."  (Morrison Br. Ex. 5: Mamis Interrog. Resp. ¶ 4.)  In addition, Dr. Mamis has been "suspended from work for wrongful conduct" and has been "found liable for [somebody] dying under [his] care."  (Morrison Br. Ex. 5: Mamis Interrog. Resp. ¶¶ 9, 11.)

schedule on Mondays and Fridays.  (Mamis Aff. ¶¶ 1-3; Morrison Dep. at 34, 36-37; Mamis Interrog.

Resp. ¶ 2.)   Dr. Mamis "do[es] not have the authority to decline to see inmates who request

treatment."  (Mamis Aff. ¶ 3.)   Dr. Mamis was Morrison's primary care physician at Fishkill.

(Mamis Aff. ¶ 2.)  Dr. Mamis' "recollection of [Morrison's] medical treatment is solely based on a

review of [Morrison's] medical records maintained by DOCS."  (Mamis Aff. ¶ 4.)

       Dr. Mamis saw Morrison for the first time on November 9, 2007.  (Mamis Rule 56.1

Stmt. ¶ 5; Mamis Aff. ¶ 5; Morrison Medical Records[4] at 79.) Dr. Mamis ordered an MRI to discern

the cause of Morrison's headaches and prescribed Ibuprofen for his pain.  (Mamis Rule 56.1 Stmt.

¶¶ 7-8; Mamis Aff. ¶ 6; Morrison Br. Ex. 6: X-ray & MRI Records at 108; Morrison Dep. at 56-57,

59; Morrison Med. Records at 79.)

       Upon questioning by the MRI facility staff, Morrison reported that he had bullets in

his chest.[5]   (Morrison Dep. at 58-59; Proposed Am. Compl. at 1.)   As a result, the MRI was

postponed and Dr. Mamis (or Dr. Sotille) ordered an x-ray to "evaluate [the] bullets." (X-ray & MRI

Records at 106, 108-09; Morrison Dep. at 45, 57-59; Proposed Am. Compl. at 1; Mamis Interrog.

---

[4]    Morrison claims that Dr. Mamis "[f]alsified [p]aperwork," seemingly referring to Morrison's
medical records.  (Morrison Br. at 3, 8.)  Morrison, however, has not presented any
admissible evidence to support this allegation.

[5]    Morrison alleges that a nurse explained to him that Dr. Mamis should have asked Morrison
whether he had any bullets in his body prior to ordering an MRI.  (Proposed Am. Compl. at
1.)  This is inadmissible hearsay, and not cognizable on this motion.  Dr. Mamis answered
Morrison's interrogatory question, "[d]id you conduct a questionair[re] while Mr. Morrison
was present" by stating that, "[b]efore an MRI is given, the patient fills out a form." (Mamis
Interrog. Resp. ¶¶ 15-18.)

4

Resp. ¶ 15.)[6/]  Morrison alleges that he asked Dr. Mamis to remove the bullets from his body, but that Dr. Mamis refused.  (Morrison Br. at 3-4.)

In December 2007, Morrison complained that his migraines persisted and that the Ibuprofen gave him "little relief."  (Morrison Med. Records at 71-76.)  At that time, Dr. Mamis refused to prescribe Elavil, a prescription pain medication, because Morrison was already "on Celexa." (Morrison Med. Records at 75.)  On December 21, 2007, Dr. Mamis ordered a CAT scan. (Morrison Med. Records at 72.)  On January 2, 2008, after continued complaints by Morrison, Dr. Mamis prescribed 25 mg. of Elavil "for [Morrison's] headaches" to be taken in addition to Ibuprofen and Motrin.  (Morrison Med. Records at 70; Mamis Rule 56.1 Stmt. ¶¶ 6-7; Mamis Aff. ¶ 6; Morrison Dep. at 54, 56, 58-60, 67.)

On January 14, 2008, Dr. Mamis increased Morrison's Elavil dosage to 50 mg. and instructed Morrison also to continue taking Ibuprofen.  (Morrison Med. Records at 69; Mamis Rule 56.1 Stmt. ¶ 7; Mamis Aff. ¶ 6; Morrison Dep. at 54, 60-61.)  On February 3, 2008, Dr. Mamis increased Morrison's Elavil dosage to 75 mg. because Morrison had been complaining that 50 mg. of Elavil had not alleviated his pain.  (Morrison Med. Records at 66-67; Morrison Dep. at 54, 57, 60-61; Mamis Rule 56.1 Stmt. ¶ 7; Mamis Aff. ¶ 6.)  In late February, Morrison reported that the increased Elavil dosage had "some effect on [his] headache pain," but no effect on his back pain. (Morrison Med. Records at 62.)

---

[6/]    On January 3, 2008, Dr. Mueller, a roentgenologist, x-rayed Morrison's chest and discovered a "1.5cm metallic fragment in anterior soft tissues left upper thorax." (X-ray & MRI Records at 106.)

In March through June 2008, Morrison frequently reported that the Elavil was "not working," expressed concern about continuing to take Elavil without seeing mental health professionals,[7] and requested a new pain prescription. (Morrison Med. Records at 24-26, 32, 41, 44-45, 56.) Dr. Mamis continued to prescribe the same dosage of Elavil and Ibuprofen, even after he saw Morrison on April 25, 2008. (Morrison Med. Records at 23, 36, 53.)[8] During April through June 2008, Morrison asked for Ben Gay several times for his back; the nurses initially denied Morrison's request, subsequently granted it, and later denied it "per Dr. Mamis." (Morrison Med. Records at 27, 32, 39, 41, 45.) In April 2008, Morrison stated that he "wanted to do push up[s] and pull ups," but the nurse on sick call advised Morrison to refrain from doing so until the "cause of [his] back pain [is] resolved." (Morrison Med. Records at 35.)

---

[7] Morrison sees a "[p]sychiatrist and social worker" for "mental health" treatment. (Morrison Dep. at 77; Morrison Med. Records at 22, 25, 27, 34, 37-38, 48, 50, 54, 56, 71, 76-78, 80-84, 88-90.) His mental health treatment is not at issue in this case.

[8] Morrison disputes that Dr. Mamis saw him on April 25, 2008. (Morrison 56.1 Stmt. ¶ 5.) Morrison also alleges that he was scheduled for "call outs" on January 4 and 23, 2008, February 7 and 25, 2008, March 10 and 24, 2008, May 30, 2008 and July 28 and 31, 2008, but that Dr. Mamis intentionally "skipped" the appointments. (Morrison Br. at 2; Compl. at 9.) Morrison's medical records show the following: (a) Dr. Mamis noted that Morrison's January 9, 2008 call out was "cancelled" (Morrison Med. Records at 70); (b) Morrison was scheduled for a call out on February 18, 2008 that did not occur (Morrison Med. Records at 65); (c) Morrison was scheduled for a call out on February 29, 2008 that had to be re-scheduled for March 24, 2008 (Morrison Med. Records at 57-58); (d) Morrison was scheduled for a call out on March 14, 2008 but the appointment had to be rescheduled because "time ran short and call out did not get completed" (Morrison Med. Records at 52); (e) Morrison was scheduled for a call out on March 31, 2008, but Dr. Mamis indicated that Morrison was "not seen" (Morrison Med. Records at 47, 49); (f) Morrison was on the call-out list on April 21, 22 and 23, 2008 (Morrison Med. Records at 37-38, 44); (g) on May 11, 2008, Morrison was scheduled for a call-out on May 30, 2008 (Morrison Med. Records at 27).

On May 6, 2008, an x-ray was taken of Morrison's back.  (Mamis Rule 56.1 Stmt. ¶ 9; Morrison Br. Ex. 3: 5/7/08 CORC Denial of Grievance; Morrison Dep. at 45, 49; Morrison X-ray & MRI Records at 105; Mamis Aff. ¶ 8.)  Dr. Mamis concluded that the x-ray showed that Morrison had a degenerative discogenic change, "which in layman's terms means that [Morrison] has an arthritic back."  (Mamis Aff. ¶ 8; Morrison X-ray & MRI Records at 105.)  According to Dr. Mamis, the proper treatment for an "arthritic back" is "over-the-counter pain medication such as Tylenol, Advil and Motrin."  (Mamis Aff. ¶ 8.)  On June 5, 2008, Dr. Mamis scheduled a "neurology consult" for Morrison.  (Morrison Med. Records at 20.)

In addition to the times Dr. Mamis saw Morrison, Dr. Mamis "reviewed [Morrison's] charts frequently and followed up on his status and made necessary documentation noting his treatment status."  (Mamis Aff. ¶ 5; see also, e.g., Morrison Med. Records at 20, 23, 53, 57-58, 62, 66-67, 72, 75, 77.)

## ANALYSIS

### I.   SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary "judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Instead, the non-moving party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e);  accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'") (citations omitted), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[9/] The Court draws all inferences in favor of the nonmoving party only after determining that such

---

[9/]    See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact.  See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987).  To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.  While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

"The Court recognizes that it must 'must extend extra consideration' to pro se plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions." Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Peck, M.J.) (citations & internal quotations omitted); see, e.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they

suggest'")[10/]  "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Cole v. Artuz, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).[11/]

## II.    DEFENDANT MAMIS' SUMMARY JUDGMENT MOTION SHOULD BE GRANTED

Morrison alleges that Dr. Mamis "has ignored [his] complaint [f]or [a] [b]ack injury [f]or 5 months and has denied [him] proper medical treatment and physical therapy." (Dkt. No. 2: Compl. ¶ II.D.)  Dr. Mamis argues that summary judgment should be granted because Morrison's back problem is not a "serious medical condition" and Dr. Mamis was not "[d]eliberately [i]ndifferent" to Morrison's back pain. (Dkt. No. 25: Mamis Br. at 6-8.)

---

[10/]    See also, e.g., Ferran v. Town of Nassau, 471 F.3d 363, 369 (2d Cir. 2006); Fuller v. Armstrong, 204 Fed. Appx. 987, 988 (2d Cir. 2006), cert. denied, 128 S. Ct. 209 (2007); Gildor v. United States Postal Serv., 179 Fed. Appx. 756, 758 (2d Cir. 2006); Porter v. Coughlin, 421 F.3d 141, 144 n.2 (2d Cir. 2005); Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Johnson v. Buffalo Police Dept., 46 Fed. Appx. 11, 12 (2d Cir. 2002), cert. denied, 539 U.S. 959, 123 S. Ct. 2645 (2003).

[11/]    See also, e.g., United States v. Acomb, No. 99-6308, 216 F.3d 1073 (table), 2000 WL 899482 at *1 (2d Cir. June 29, 2000); James v. Phillips, 05 Civ. 1539, 2008 WL 1700125 at *3 (S.D.N.Y. Apr. 9, 2008); Thompson v. Tracy, 00 Civ. 8360, 2008 WL 190449 at *5 (S.D.N.Y. Jan. 17, 2008); Bunting v. Nagy, 452 F. Supp. 2d 447, 454 (S.D.N.Y. 2006); Rodriguez v. McClenning, 399 F. Supp. 2d 228, 234 & n.52 (S.D.N.Y. 2005); Pack v. Artuz, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004); Rector v. Sylvania, 285 F. Supp. 2d 349, 353 (S.D.N.Y. 2003); Walker v. Vaughan, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002); Hussein v. The Waldorf-Astoria, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001), aff'd, 31 Fed. Appx. 740 (2d Cir. 2002).

A.      **Legal Standard Governing § 1983 Eighth Amendment Deliberate Indifference To Serious Medical Needs Claims**

To prevail in a § 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988). "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."   Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), cert. denied, 512 U.S. 1240, 114 S. Ct. 2749 (1994).

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials and conduct that offends "evolving standards of decency." E.g., Hudson v. McMillan, 503 U.S. 1, 5, 8, 112 S. Ct. 995, 998, 1000 (1992); Wilson v. Seiter, 501 U.S. 294, 297, 308, 111 S. Ct. 2321, 2323, 2329 (1991); Estelle v. Gamble, 429 U.S. 97, 102, 104-05, 97 S. Ct. 285, 290, 291 (1976); Gregg v. Georgia, 428 U.S. 153, 173, 96 S. Ct. 2909, 2925 (1976).

To establish an Eighth Amendment violation based on a claim that a prison official has placed an inmate's health in danger, the inmate must show that the prison official acted with "deliberate indifference" to the inmate's serious medical needs. E.g., Helling v. McKinney, 509 U.S. 25, 32, 113 S. Ct. 2475, 2480 (1993); Estelle v. Gamble, 429 U.S. at 104-05, 97 S. Ct. at 291.[12]

---

[12]     See also, e.g., Fransua v. Vadlamudi, No. 05-1715-pr, 2008 WL 4810066 at *1 (2d Cir. Nov. 3, 2008); Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006); Smith v. Carpenter, 316 F.3d 178, 183 (2d Cir. 2003); Selby v. Coombe, 17 Fed. Appx. 36, 37 (2d Cir. 2001) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).

As the Second Circuit has explained, "the deliberate indifference standard embodies both an objective and a subjective prong." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).[13] "Objectively, the alleged deprivation must be 'sufficiently serious.'" Hathaway v. Coughlin, 99 F.3d at 553; see, e.g., Hudson v. McMillan, 503 U.S. at 9, 112 S. Ct. at 1000 ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious'"); Smith v. Carpenter, 316 F.3d at 183-84 ("The objective "medical need' element measures the severity of the alleged deprivation . . .").[14]  "The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves . . . .'" Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986).  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991) (citation omitted); see also, e.g., Dean v. Coughlin, 804 F.2d at 215 ("'[T]he essential test is one of medical necessity and not one simply of desirability.'"). Thus, Eighth Amendment protection is limited to "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" Chance v. Armstrong, 143 F.3d at 702;[15] accord,

---

[13]    Accord, e.g., Fransua v. Vadlamudi, 2008 WL 4810066 at *1; Salahuddin v. Goord, 467 F.3d at 279-81; Smith v. Carpenter, 316 F.3d at 183; Selby v. Coombe, 17 Fed. Appx. at 37; Chance v. Armstrong, 143 F.3d at 702.

[14]    See also, e.g., Fransua v. Vadlamudi, 2008 WL 4810066 at *1; Salahuddin v. Goord, 467 F.3d at 279-80; Selby v. Coombe, 17 Fed. Appx. at 37; Chance v. Armstrong, 143 F.3d at 702.

[15]    The Second Circuit in Chance v. Armstrong identified several factors that are relevant in determining whether a serious medical condition exists, including "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or (continued...)

e.g., Fransua v. Vadlamudi, 2008 WL 4810066 at *1; Morales v. Mackalm, 278 F.3d 126, 132 (2d Cir. 2002); Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'").

       The Second Circuit has stated that determining whether a deprivation is objectively serious entails two inquiries:

> Determining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable care. Thus, "prison officials who act reasonably [in response to an inmate health risk] cannot be found liable under the Cruel and Unusual Punishments Clause," and, conversely, failing "to take reasonable measures" in response to a medical condition can lead to liability.
>
> Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner. For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious. Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." Thus although we sometimes speak of a "serious medical condition" as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

---

15/     (...continued)
treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" 143 F. 3d at 702.

Salahuddin v. Goord, 467 F.3d at 279-80 (citations omitted).

"Subjectively, the charged official must act with a sufficiently culpable state of mind." Hathaway v. Coughlin, 99 F.3d at 553; accord, e.g., Fransua v. Vadlamudi, 2008 WL 4810066 at *1; Salahuddin v. Goord, 467 F.3d at 280-81; Smith v. Carpenter, 316 F.3d at 184 ("[T]he subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."); Selby v. Coombe, 17 Fed. Appx. at 37; Chance v. Armstrong, 143 F.3d at 702. "The required state of mind, equivalent to criminal recklessness, is that the official '"knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."'" Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (quoting Hathaway v. Coughlin, 99 F.3d at 553 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994))).[16]

Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison [officials or] guards in intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. at 104-05, 97 S. Ct. at 291 (fn. omitted); accord, e.g., Kaminsky v. Rosenblum, 929 F.2d 922, 926 (2d Cir. 1991) ("Cruel and unusual punishment may

---

[16]     See also, e.g., Fransua v. Vadlamudi, 2008 WL 4810066 at *1; Salahuddin v. Goord, 467 F.3d at 280 ("Deliberate indifference is a mental state equivalent to subjective recklessness. . . . This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."); Smith v. Carpenter, 316 F.3d at 184; Selby v. Coombe, 17 Fed. Appx. at 37; Chance v. Armstrong, 143 F.3d at 702; LaBounty v. Coughlin, 137 F.3d 68, 72-73 (2d Cir. 1998) ("To succeed in showing deliberate indifference, [plaintiff] must show that the acts of defendants involved more than lack of due care, but rather involved obduracy and wantonness in placing his health in danger.").

consist of prison officials delaying an inmate access to needed medical care.").[17]   However, an

"inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference."

Estelle v. Gamble, 429 U.S. at 105-06, 97 S. Ct. at 292; accord, e.g., Burton v. New York State Dep't

of Corr., 93 Civ. 6028, 1994 WL 97164 at *2 (S.D.N.Y. March 21, 1994) (Sotomayor, D.J.).  "Thus,

a complaint that a physician has been negligent in diagnosing or treating a medical condition does

not  state a valid claim . . . under the Eighth Amendment."  Estelle v. Gamble, 429 U.S. at 106, 97

S. Ct. at 292.[18]   As the Supreme Court has stated, "[m]edical malpractice does not become a

constitutional violation merely because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. at 106,

97 S. Ct. at 292; accord, e.g., Smith v. Carpenter, 316 F.3d a 184 ("Because the Eighth Amendment

is not a vehicle for bringing medical malpractice claims,  nor a substitute for state tort law, not every

lapse in prison medical care will rise to the level of a constitutional violation.");  Hathaway v.

Coughlin, 99 F.3d at 553; Burton v. New York State Dep't of Corr., 1994 WL 97164 at *2.

An act of malpractice will amount to deliberate indifference only if "the malpractice

involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a

conscious disregard of a substantial risk of serious harm.'"  Chance v. Armstrong, 143 F.3d at 703

---

[17]   See, e.g., Hathaway v. Coughlin, 37 F.3d 63, 67 (2d Cir. 1994) (delay for more than two
years in removing broken pins from prisoner's hip despite nearly seventy complaints of pain),
cert. denied, 513 U.S. 1154, 115 S. Ct. 1108 (1995); Liscio v. Warren, 901 F.2d 274, 277 (2d
Cir. 1990) (failure to provide medical attention to a delirious inmate for three days); Archer
v. Dutcher, 733 F.2d 14, 15-17 (2d Cir. 1984) (denying summary judgment where plaintiff
"identifie[d]  intentional efforts on the part of defendants to delay her access to medical care
at a time [when] she was in extreme pain"); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir.
1974).

[18]   Accord, e.g., Salahuddin v. Goord, 467 F.3d at 280; Hathaway v. Coughlin, 99 F.3d at 553;
Felipe v. New York State Dep't of Corr. Servs., No. 95-CV-1735, 1998 WL 178803 at *3
(N.D.N.Y. Apr. 10, 1998) (Pooler, D.J.).

(quoting <u>Hathaway</u> v. <u>Coughlin</u>, 99 F.3d at 553); <u>Harrison</u> v. <u>Barkley</u>, 219 F.3d at 139 ("We agree that the mere malpractice of medicine in prison does not amount to an Eighth Amendment violation. . . . This principle may cover a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady. . . . [But] [c]onsciously disregarding an inmate's legitimate medical needs is not 'mere medical malpractice.'"); <u>Hathaway</u> v. <u>Coughlin</u>, 37 F.3d at 66 ("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.").

       "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  <u>Chance</u> v. <u>Armstrong</u>, 143 F.3d at 703; <u>accord</u>, <u>e.g.</u>, <u>Hathaway</u> v. <u>Coughlin</u>, 37 F.3d at 70 (Jacobs, C.J., dissenting) ("'We do not sit as a medical board of review.  Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors.'"); <u>Scott</u> v. <u>Laux</u>, No. 07-CV-936, 2008 WL 4371778 at *4 (N.D.N.Y. Sept. 18, 2008) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a § 1983 claim.") (citation & quotations omitted); <u>Culp</u> v. <u>Koenigsmann</u>, 99 Civ. 9557, 2000 WL 995495 at *7 (S.D.N.Y. July 19, 2000) (Peck, M.J.) ("Mere disagreements with the quality of medical care, however, do not state an Eighth Amendment

claim."); see also, e.g., Troy v. Kuhlmann, 96 Civ. 7190, 1999 WL 825622 at *6 (S.D.N.Y. Oct. 15,

1999) ("a prisoner's disagreement with the diagnostic techniques or forms of treatment employed by

medical personnel does not itself give rise to an Eighth Amendment claim"); Brown v. Selwin, 250

F. Supp. 2d 299, 308 (S.D.N.Y. 1999) (citing cases), aff'd, 29 Fed. Appx. 762 (2d Cir. 2002); Negron

v. Macomber, 95 Civ. 4151, 1999 WL 608777 at *6 (S.D.N.Y. Aug. 11, 1999); Espinal v. Coughlin,

98 Civ. 2579, 1999 WL 387435 at *3 (S.D.N.Y. June 14, 1999).[19]

---

[19]    Furthermore, a delay in medical treatment does not necessarily invoke the Eighth
Amendment:

> Although a delay in providing necessary medical care may in some cases constitute
> deliberate indifference, this Court has reserved such a classification for cases in
> which, for example, officials deliberately delayed care as a form of punishment;
> ignored a "life-threatening and fast-degenerating" condition for three days; or delayed
> major surgery for over two years.  No such circumstances are present here.  At no
> point was [plaintiff's] condition "fast-degenerating" or "life-threatening," and there
> is no indication that [defendant] delayed treatment in order to punish him.  Moreover,
> any delay in treatment in this case does not rise to the egregious level identified in
> Hathaway.  That [plaintiff] feels something more should have been done to treat his
> injuries is not a sufficient basis for a deliberate indifference claim.

Demata v. New York State Corr. Dep't of Health Servs., No. 99-0066, 198 F. 3d 233 (table),
1999 WL 753142 at *2 (2d Cir. Sept. 17, 1999) (citations omitted) (Summary judgment for
defendants where plaintiff complained of knee injury in February 1994 and surgery not
performed until March 1997.); accord, e.g., Smith v. Carpenter, 316 F.3d at 185 ("When the
basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the
provision of otherwise adequate medical treatment, it is appropriate to focus on the
challenged delay or interruption in treatment rather than the person's underlying medical
condition alone in analyzing whether the alleged deprivation is, in 'objective terms,
sufficiently serious,' to support an Eighth Amendment claim.") (emphasis in original);
Freeman v. Strack, 99 Civ. 9878, 2000 WL 1459782 at *9 (S.D.N.Y. Sept. 29, 2000) (Peck,
M.J.) (No Eighth Amendment claim against nurse who scheduled inmate with appendicitis
requiring appendectomy for appointment two hours later rather than seeing inmate
immediately where "[t]here was nothing in [the inmate]'s medical history which would have
put [the nurse] on notice that [plaintiff] was suffering from the onset of appendicitis . . . and
there is no evidence that [the officer] gave [the nurse] any reason to believe that there was
(continued...)

"Just as the relevant 'medical need' can only be identified in relation to the specific factual context of each case, the severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances.  The absence of adverse medical effects or demonstrable physical injury is one such factor that may be used to gauge the severity of the medical need at issue.  Indeed, in most cases the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm."  Smith v. Carpenter, 316 F.3d at 187 (citations omitted).

## B. Defendant Mamis' Summary Judgment Motion Should Be Granted

Morrison claims that Dr. Mamis was deliberately indifferent to a serious medical need by "ignor[ing] [his] complaint [f]or [a] [b]ack injury [f]or 5 months and . . . den[ying] [him] proper medical treatment and physical therapy."  (Dkt. No. 2: Compl. ¶ II.D.)

Dr. Mamis argues that "[a]part from plaintiff's conclusory assertions, there is nothing in the record to support his claim that he suffered from a serious medical condition."  (Dkt. No. 25: Mamis Br. at 6.)  Dr. Mamis focuses solely on Morrison's back pain, and ignores Morrison's migraines.  (Id.)  Dr. Mamis is not entitled to summary judgment on this basis.  Depending upon the circumstances, severe back pain, especially if lasting an extended period of time, and migraine headaches may qualify as "serious medical needs" under the Eighth Amendment. See, e.g., Mendoza

---

19/    (...continued)
       an emergency on hand."); Culp v. Koenigsmann, 2000 WL 995495 at *7-8 (rejecting claim based on fact that one doctor recommended arthroscopic surgery for knee injury in April 1999, while another doctor concluded that surgery was not warranted until more conservative measures like physical therapy had been tried and failed).

v. McGinnis, No. 05-CV-1124, 2008 WL 4239760 at *10 & n.16 (N.D.N.Y. Sept. 11, 2008) ("The question of whether chronic back pain can rise to a level of constitutional significance is dependent upon the circumstances of the particular case presented. In this instance, given plaintiff's diagnosed condition of degenerative disc disease, and resolving all ambiguities in plaintiff's favor, I conclude that a reasonable factfinder could find that the condition constitutes a serious medical need." Moreover, "defendants fail to address plaintiff's migraine headaches, which can also constitute a serious medical need."); Guarneri v. Hazzard, No. 06-CV-0985, 2008 WL 552872 at *6 (N.D.N.Y. Feb. 27, 2008) (quoting Nelson v. Rodas, 01 Civ. 7887, 2002 WL 31075804 at *14 (S.D.N.Y. Sept. 17, 2002) (Peck, M.J.)); Peterson v. Miller, No. 04-CV-797, 2007 WL 2071743 at *7 (N.D.N.Y. July 13, 2007) (Migraine headaches have "been found by other courts to represent a sufficiently serious potential medical need as to survive a motion for summary judgment."); Faraday v. Lantz, No. 03-CV-1520, 2005 WL 3465846 at *5 (D. Conn. Dec. 12, 2005) (Persistent complaints of "lower back pain caused by herniated, migrated discs [and] sciatica . . . " leading to severe pain constitute a serious medical need.); Moriarty v. Neubould, No. 02-CV-1662, 2004 WL 288807 at *2 n.2 (D. Conn. Feb. 10, 2004) (Plaintiff's migraine headaches could constitute a sufficiently serious condition to warrant Eighth Amendment protection since they can be "extremely painful and debilitating."); Nelson v. Rodas, 2002 WL 31075804 at *14 ("Severe back pain, especially if lasting an extended period of time, can amount to a 'serious medical need' under the Eighth Amendment.") (& cases cited therein).[20/]

---

[20/]   But cf. Cain v. Jackson, 05 Civ. 3914, 2007 WL 2193997 at *1, 6 (S.D.N.Y. July 27, 2007) (prisoner's degenerate disc disease in her cervical spine, which was compounded when she fell from her cell bunk and injured her back, was not "sufficiently serious" to implicate the
(continued...)

Morrison, however, cannot establish deliberate indifference to his medical needs. The SHU nurses dispensed medicine to Morrison and responded to his complaints almost every day. (See page 2 above.) Dr. Mamis saw Morrison at least three times between October 2007 and May 2008[21] and reviewed Morrison's medical records frequently. (See pages 3-6 above.) Dr. Mamis also responded to Morrison's continued complaints of pain by prescribing Elavil upon Morrison's complaining that the Ibuprofen was not working, and then increasing the Elavil dosage twice. (See page 4 above.) Dr. Mamis ordered an MRI to discern the cause of Morrison's headaches. (See page 3 above.)[22] When Dr. Mamis discovered that Morrison had bullets in his body, Dr. Mamis ordered

---

[20] (...continued)
Eighth Amendment); Goros v. Cent. Office Review Comm., No. 03-CV-407, 2006 WL 2794415 at *6 (N.D.N.Y. Sept. 26, 2006) ("Case law certainly exists suggesting that . . . Plaintiff's arthritis and gastrointestinal disorders may not rise to the level of a sufficiently serious medical condition for purposes of the Eighth Amendment. In particular, noticeably missing from Plaintiff's allegations are any factual assertions indicating that his conditions, when experienced together, constituted a 'condition of urgency, one that may produce death, degeneration, or extreme pain.' The closest Plaintiff comes to alleging a sufficiently serious medical need is through his allegations of 'worse[ning] pain' in his left shoulder and legs (presumably, arthritic pain).") (citation omitted); Davis v. Reilly, 324 F. Supp. 2d 361, 368 (E.D.N.Y. 2004) (A "sprained back and neck . . . do not constitute a serious medical condition."); Rodriguez v. Mercado, 00 Civ. 8588, 2002 WL 1997885 at *2-3, 8 (S.D.N.Y. Aug. 28, 2002) (Prisoner's back pain and migraines not "sufficiently serious" to implicate Eighth Amendment.).

[21] Although Morrison disputes that Dr. Mamis saw him on April 25, 2008, Morrison concedes that Dr. Mamis saw him at least three and possibly five times. (See page 5 n.8 above; Dkt. No. 24: Lee Aff. Ex. C: Morrison Dep. at 55-60.)

[22] Morrison claims that Dr. Mamis was deliberately indifferent for not questioning Morrison about whether he had bullets in his body before ordering the MRI. According to Dr. Mamis, the proper protocol is for a patient to "fill[] out a form . . . before an MRI is given." (See page 3 n.5 above.)  Even if, as Morrison alleges, the proper protocol is for the doctor to administer the questionnaire before ordering the MRI, Dr. Mamis' failure to do so at most demonstrates his negligence, not deliberate indifference, particularly in light of the
(continued...)

x-rays to "evaluate [the] bullets" and provide information on Morrison's back pain.  (See pages 3,

6 above.)  Dr. Mamis also ordered a CAT scan and neurological consult to discover the cause of

Morrison's migraines.  (See pages 4, 6 above.)  See, e.g., Johnston v. Maha, No. 06-CV-6001, 2008

WL 4823607 at *3 (W.D.N.Y. Nov. 6, 2008) (No deliberate indifference where, after plaintiff fell

and injured himself, plaintiff "was taken to an outside hospital where he was treated and released the

same day.  X-rays were taken of plaintiff, he was given medication, and diagnosed with degenerative

lower back pain and a right knee contusion," and received "followup care, including examinations

by physicians and the prescription of medication."); Abney v. McGinnis, 01 Civ. 8444, 2007 WL

844675 at *3 (S.D.N.Y. Mar. 16, 2007) (No deliberate indifference where the orthotics specialist met

with plaintiff thirteen times within an almost two year period and responded to plaintiff's complaints

about his orthotic boot "by refitting and reforming the orthoses.  Additionally, while there were time

---

22/     (...continued)
cancellation of the MRI as soon as Morrison informed the MRI staff that he had bullets in
his body.  As noted in Section II.A. above, a doctor's negligence does not warrant Eighth
Amendment protection.  Moreover, even if this constituted deliberate indifference – which
it does not – Morrison suffered no injury as a result.  See Bellotto v. County of Orange, 248
Fed. Appx. 232, 237 (2d Cir. 2007) ("[Plaintiff]'s treatment, which allegedly included missed
medication dosages and inadequate monitoring of medications, . . . could not be found to rise
to the level of a constitutional violation because the risk of harm that [plaintiff] faced as a
result of the alleged treatment was not substantial. . . . [T]he only medical consequence he
alleges was an anxiety attack, which, according to both [plaintiff]'s testimony and his medical
records, resulted in no physical injuries and 'no acute distress.'"); Smith v. Carpenter, 316
F.3d 178, 187 (2d Cir. 2003) ("The absence of adverse medical effects or demonstrable
physical injury is one such factor that may be used to gauge the severity of the medical need
at issue.  Indeed, in most cases the actual medical consequences that flow from the alleged
denial of care will be highly relevant to the question of whether the denial of treatment
subjected the prisoner to a significant risk of serious harm.") (citations omitted);
Young-Flynn v. Wright, 05 Civ.1488, 2007 WL 241332 at *18-19 (S.D.N.Y. Jan. 26, 2007)
(granting motion to dismiss on plaintiff's claims of deliberate indifference to plaintiff's
complaints including chest pains because plaintiff did not address how "defendants' failure
to take any action . . . directly caused him any specific injury.").

lags between [the orthotic specialist's] visits to plaintiff and between plaintiff's request for a visit from [the orthotic specialist] and [the orthotic specialist]'s subsequent visit, no evidence suggests an intentional delay that could support a claim of deliberate indifference."); Davidson v. Scully, 155 F. Supp. 2d 77, 83-84 (S.D.N.Y. 2001) (No subjective deliberate indifference to plaintiff's foot problems where "plaintiff was examined and treated . . . on numerous occasions by DOCS medical personnel as well as by outside orthopedic doctors to whom plaintiff was referred by DOCS."); Williams v. M.C.C. Inst., 97 Civ. 5352, 1999 WL 179604 at *9 (S.D.N.Y. Mar. 31, 1999) (No subjective deliberate indifference where plaintiff was examined for dental problems on eight separate occasions during one year and five different occasions the next year and was always given treatment when he sought it.), aff'd, 101 Fed. Appx. 862 (2d Cir. 2004); Keyes v. Strack, 95 Civ. 2367, 1997 WL 187368 at *4 (S.D.N.Y. Apr. 16, 1997) ("The record shows that defendants were not deliberately indifferent to [plaintiff's] medical needs.  The Fishkill medical staff made continual efforts to treat and care for plaintiff," with thirty visits to the facility's clinic over an eleven month period.); Alston v. Howard, 925 F. Supp. 1034, 1040 (S.D.N.Y. 1996) (No deliberate indifference where plaintiff "was afforded consistent, attentive surgical and therapeutic medical care on about a weekly basis in a comprehensive attempt to remedy the source of [plaintiff's] ankle pain."); Johnson v. Dep't of Corr., 92 Civ. 7716, 1995 WL 121295 at *3 (S.D.N.Y. Mar. 21, 1995) (No deliberate indifference where "[d]uring the nine month period that plaintiff was in DOC custody he was examined and treated on numerous occasions for his hip condition and a myriad of other ailments.").

Morrison, however, argues that Dr. Mamis was deliberately indifferent because he "skipped" appointments with Morrison.  (See page 5 n.8 above.)  As noted above (page 16 n.19), the Second Circuit has held that:

> Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a "life-threatening and fast-degenerating" condition for three days; or delayed major surgery for over two years.

Demata v. New York State Corr. Dep't of Health Servs., No. 99-0066, 198 F. 3d 233 (table), 1999 WL 753142 at *2 (2d Cir. Sept. 17, 1999) (citations omitted).  Dr. Mamis' actions do not rise to the level of deliberate indifference contemplated by the Second Circuit in Demata.  Even assuming Dr. Mamis "skipp[ed]" appointments, Dr. Mamis still saw Morrison three to five times during the relevant time period and also regularly reviewed Morrison's medical chart.  (See pages 3-6, 19 n.21 above.)  The medical records do not indicate that Dr. Mamis "deliberately delayed care as a form of punishment," but rather that time ran short or certain appointments needed to be rescheduled.  (See page 5 n.8 above.)  Furthermore, while Morrison's medical conditions were serious, neither was "life-threatening" nor "fast-degenerating."  See, e.g., Evan v. Manos, 336 F. Supp. 2d 255, 261-63 (W.D.N.Y. Sept. 23, 2004) (Physician was not deliberately indifferent to plaintiff's back pain, despite the "nine-day delay between being placed on the callout list and plaintiff's initial visit" and despite the physician's command during the first appointment with plaintiff that plaintiff "get the hell out of [his] office" when the plaintiff "questioned the delay," . . . "plaintiff has not identified anything that [the physician] could or should have done had he examined plaintiff sooner, nor has he shown that he was harmed by any delay in treatment. . . . Even if [the physician] arguably acted hastily, or

overreacted, by terminating plaintiff's first visit when plaintiff began complaining about the delay in seeing him, that does not show that [the physician] had a culpable state of mind for Eighth Amendment purposes. [The physician]'s actions hardly amount to conduct that is 'repugnant to the conscience of mankind,' which is necessary to make out a claim under the Eight Amendment.");
Rogers v. Morgan, No. 02-CV-6004, 2003 WL 23350429 at *3, 5 (W.D.N.Y. Oct. 14, 2003) (No deliberate indifference where plaintiff, who suffered from chronic back pain, "had to wait, at most, 39 days to be examined by an orthopedic specialist. There is nothing in the record to indicate that this wait was unreasonable under the circumstances, or that it was in any way attributable to defendant.  In the interim, defendant continued to provide plaintiff with painkillers and muscle relaxants.  Furthermore, plaintiff has failed to demonstrate that his condition worsened during that period, or that he was otherwise prejudiced by the delay.").[23/]

---

[23/]   See also, e.g., Myrie v. Calvo/Calvoba, 07 Civ. 8834, 2008 WL 5062734 at *7 (S.D.N.Y. Nov. 25, 2008) (Doctor was not deliberately indifferent to plaintiff's vision problems where doctor failed to promptly re-schedule plaintiff's optometrist appointment.  Plaintiff did not make the doctor aware that "serious harm could occur if an optometrist's appointment was not re-scheduled immediately."); Fuller v. Hohensee, No. 03-CV-0514, 2008 WL 4826261 at *11 (W.D.N.Y. Nov. 5, 2008) ("While dental pain and toothaches can be excruciatingly painful and proper dental care is an important part of overall health, short, intermittent delays in appointment times, absent any indication of serious infection or aggravation of the condition and absent any knowledge of the inmate's complaints or suffering, cannot support a finding of an Eighth Amendment violation under section 1983."); James v. Phillips, 05 Civ. 1539, 2008 WL 1700125 at *7 n.1 (S.D.N.Y. Apr. 9, 2008) ("Plaintiff also asserts that [Dr.] Mamis cancelled a follow-up appointment for Physiatry for his right knee on November 14, 2003 out of a retaliatory motive because of prior grievances plaintiff filed against him. Whether viewed through the lens of medical indifference or retaliation for engaging in speech or a protected activity, the canceling of one appointment is not sufficiently serious to amount to a cognizable claim under any theory."); Taylor v. Valamudy, No. 03-CV-1029, 2006 WL 2795304 at *12 (N.D.N.Y. Sept. 26, 2006) ("Although Plaintiff feels like his surgery should have been expedited, the surgery occurred approximately two months after the recommendation was made by the ENT specialist. This 'delay' does not invoke the Eighth (continued...)

Morrison also maintains that Dr. Mamis was deliberately indifferent by refusing to switch Morrison from Elavil to another prescription pain killer and refusing to allow Morrison to take Ben Gay.  As noted in Section II.A. above, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).  Morrison filed his complaint in May 2008, but only began complaining in March 2008 that the final 75 mg. Elavil dosage was not working.  (See page 5 above.)  Dr. Mamis' treatment plan certainly appears to be "adequate," particularly since Morrison had only been taking the 75 mg. dosage of Elavil for approximately three months when he filed his complaint and Dr. Mamis ordered a neurological consult, x-rays and a CAT scan to discover the cause of Morrison's back pain and migraines.  (See pages 4-6 above.)  Morrison's allegations merely amount to a disagreement about the treatment plan and not deliberate indifference.  See, e.g., Wright v. New York State Dep't of Corr. Servs., 06 Civ. 3400, 2008 WL 5055660 at *17 (S.D.N.Y. Oct. 19, 2008) (The physician's decision to start plaintiff, who suffered from acid reflux, at a lower dosage of Prevacid than recommended by plaintiff's gastroenterologist due to a concern about Prevacid's potential side effects on plaintiff "qualifies as

---

23/   (...continued)
       Amendment."); Lighthall v. Vadlamudi, No. 04-CV-0721, 2006 WL 721568 at *4-6, 12
       (N.D.N.Y. Mar. 17, 2006) (Defendants were not deliberately indifferent to the medical needs
       of plaintiff, who had low B-12 levels, prostate dyfunction, bladder dysfunction, cysts on his
       testicles, heart dysfunction and back pain due to a bulging disc.  "Some delays in receiving
       consultations naturally occurred since they had to be approved ostensibly by either the
       administration or consultant.  Once approved, however, appointments and even follow-up
       visits were scheduled.  For example, a urological consult was ordered a few days after
       Plaintiff's colonoscopy and Plaintiff received the consult about two months after the request
       was placed.").

an exercise of 'medical judgment,' and does not give rise to a constitutional violation."), report & rec. adopted, 2008 WL 5084193 (S.D.N.Y. Nov. 24, 2008); Scott v. Laux, No. 07-CV-936, 2008 WL 4371778 at *4 (N.D.N.Y. Sept. 18, 2008) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a § 1983 claim.") (citation & quotations omitted); Verley v. Wright, 02 Civ. 1182, 2007 WL 2822199 at *12 (S.D.N.Y. Sept. 27, 2007) (The health services director of a correctional facility was not deliberately indifferent to plaintiff's hepatitis C, despite that the director did not follow the treating physician's recommendation to refer plaintiff to a nutritionist and hepatologist, because the director "made an independent medical determination that it was unnecessary for [plaintiff] to visit a specialist in light of the care that he was already receiving."  The director considered the specialists that the plaintiff was already seeing, that plaintiff's medical records did not indicate a hepatologist was necessary, "that 'there was no available retreatment approved by the FDA for patients' in [plaintiff]'s circumstance," and that plaintiff had managed his weight "without consulting a nutritionist."); Goros v. Pearlman, No. 03-CV-1303, 2007 WL 1423718 at *3 (N.D.N.Y. May 10, 2007) ("Plaintiff[']s disagreements over the proper dosage of Prevacid or how long a canister of albuterol lasts does not evidence deliberate disregard."); Messa v. LeClaire, No. 03-CV-1385, 2007 WL 2292975 at *6 n.8 (N.D.N.Y. Feb. 26, 2007) ("To the extent that [plaintiff] contends he should have been provided the pain medication recommended by the outside specialist, this claim must fail because mere disagreement over proper treatment does not create a constitutional claim as long as the treatment was adequate."), report & rec. adopted, 2007 WL 2285106 (N.D.N.Y. Aug 6, 2007).

Morrison's  additional claim that Dr. Mamis was deliberately indifferent because he refused to take the bullets out of Morrison's body also amounts to mere disagreement about the treatment plan and not deliberate indifference.  Dr. Mamis' attentiveness to the bullets in Morrison's body certainly cannot be questioned because Dr. Mamis ordered x-rays to "evaluate the bullets." (See page 3 above.)  Furthermore, Morrison does not provide any evidence supporting that the bullets needed to taken out of his body.  Indeed, the only reason he gives for wanting the bullets removed is so he can have an MRI.  But Morrison presents no evidence that an MRI is essential where x-rays and a CAT scan are used instead.  See, e.g., Estelle v. Gamble, 429 U.S. 97, 107, 97 S. Ct. 285, 293 (1976) ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . ."); Kelley v. Lutz, No. 95-16003 87 F.3d 1320 (table), 1996 WL 341299 at *1 (9th Cir. June 19, 1996) (prison doctor's denial of inmate's request for CAT scan did not constitute deliberate indifference where inmate had been seen by several specialists and x-rays did not reveal any abnormality); Ferrera v. Fisher, 06 Civ. 1158, 2008 WL 4443920 at *14 (S.D.N.Y. Sept. 30, 2008) (No deliberate indifference where plaintiff had not "provided evidentiary support for his conclusory statements that he is a good candidate for surgery, that additional specialists referrals were warranted or that the various tests performed and treatments prescribed did not constitute adequate treatment."); Encarnacion v. Wright, No. 04-CV-6064, 2007 WL 2892626 at *6 (W.D.N.Y. Sept. 28, 2007) ("[I]t is clear that the most serious matters about which Plaintiff complains, i.e., that he was denied surgery

for his various ailments, amount to disagreements over treatment, which are not actionable as constitutional violations. More specifically, Plaintiff relies only on his own subjective belief that he should have surgery."); Fulmore v. Mamis, 00 Civ. 2831, 2001 WL 417119 at *8-9 & n.26 (S.D.N.Y. Apr. 23, 2001) (Peck, M.J.) (Physician's failure to order CAT scan reflected, "at most, . . . a difference in opinion as to [prisoner's] medical treatment rather than any deliberate indifference to [prisoner's] medical needs," citing cases); Culp v. Koenigsmann, 99 Civ. 9557, 2000 WL 995495 at *9 (S.D.N.Y. July 19, 2000) (Peck, M.J.) (Plaintiff's deliberate indifference "claim is based on the fact that one doctor recommended arthroscopic surgery . . . while another doctor . . . concluded that surgery was not warranted until more conservative measures like physical therapy had been tried and failed.  At most, [plaintiff]'s treatment reflects a difference in opinion as to his medical treatment rather than any deliberate indifference to his medical needs."); Vento v. Lord, 96 Civ. 6169, 1997 WL 431140 at *5 (S.D.N.Y. July 31, 1997) (Sotomayor, D.J.) ("plaintiff's [denied] x-ray request and claim that without new x-rays her physical therapy is ineffective fails to state a claim of deliberate indifference"); Wicks v. Qualtere, No. 95-CV-426, 1997 WL 176338 at *3 (N.D.N.Y. Apr. 4, 1997) (Pooler, D.J.) (refusal to order x-ray did not state a claim); Sharp v. Jeanty, 93 Civ. 0220, 1993 WL 498095 at *2 (S.D.N.Y. Nov. 30, 1993) (Leval, D.J.) (dismissing complaint where prisoner's knee was x-rayed but he was not given an orthroscan, because plaintiff's medical "records indicate[d] an extensive and ongoing course of medical treatment" of his injury, and many of his allegations amounted to "second-guessing the treatments of his health care providers", and explaining that "'[a]

prisoner's disagreement with his prescribed treatment does not afford a basis for relief under §

1983.'").[24/]

Accordingly, since Morrison has failed to show that Dr. Mamis was deliberately

indifferent to his medical needs, Dr. Mamis' summary judgment motion should be **GRANTED**.

## CONCLUSION

For the reasons set forth above, defendant's summary judgment motion should be

GRANTED.

---

[24/]   See also, e.g., Burley v. O.D.O.C., No. CV-99-1462, 2000 WL 1060658 at *4-5 (D. Or. July 11, 2000) (granting defendants summary judgment on Eighth Amendment claim where "[p]laintiff disputes that the lumbar/sacral spine x-ray shows that nothing is wrong with his head, neck, and back" and "believes that only an 'MRI' or 'Cat Scan' can confirm his injuries in those areas"); Lewis v. Herbert, No. Civ. A. 96-2933, 1996 WL 663874 at *4 (E.D. Pa. Nov. 14, 1996) ("[E]ven if Defendant's decision not to . . . order an X-Ray or Cat Scan . . . amounted to medical malpractice, a tort is not transformed into a constitutional violation simply because the victim is a prisoner."); Coppage v. Mann, 906 F. Supp. 1025, 1038-39 (E.D. Va. 1995) (rejecting plaintiff's argument that prison doctor was deliberately indifferent when he ordered two diagnostic tests which were less effective than an MRI; "The case law draws a clear distinction between situations in which the physician provides no medical care, which may amount to deliberate indifference, and those in which the physician provides merely substandard care, which amounts at most to negligence."); Trejo v. Gomez, No. C-93-0360, 1995 WL 429247 at *3 (N.D. Cal. July 13, 1995) (rejecting claim that prison doctor's failure to order CAT scan or MRI for inmate complaining of neck, back and shoulder pain constituted deliberate indifference); Johnson v. Dep't of Corr., 92 Civ. 7716, 1995 WL 121295 at *3 (S.D.N.Y. Mar. 21, 1995) (summary judgment for defendants where inmate suffering from hip condition who was examined and treated on numerous occasions complained he should have received an MRI; "the Eighth Amendment does not mandate the use of any particular medical technology or course of treatment"); Wilkerson v. Marshall, No. C 94-0009, 1994 WL 564650 at *1-4 (N.D. Cal. Oct. 3, 1994) (rejecting inmate's claim that prison doctor's failure to order an MRI constituted deliberate indifference); Lopez v. Medical Dep't, Civ. A. No. 90-5287, 1990 WL 174361 at *1 (E.D. Pa. Nov. 6, 1990) (prison medical staff's refusal to "take x-rays, perform a CAT scan and administer other medical tests" did not give rise to Eighth Amendment claim).

29

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 735, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Crotty (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

DATED:      New York, New York
            December 18, 2008

Respectfully submitted,

Andrew J. Peck
United States Magistrate Judge

Copies mailed to:     Patrick Morrison
                      Julia H. Lee, Esq.
                      Judge Paul A. Crotty